**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **MICHAEL JOHN SARNO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 16-677 (RMC)** |
| | ) | |
| **UNITED STATES DEPARTMENT OF** | ) | |
| **JUSTICE, BUREAU OF ALCOHOL,** | ) | |
| **TOBACCO, FIREARMS, AND** | ) | |
| **EXPLOSIVES,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Michael John Sarno, an incarcerated individual, submitted Freedom of Information Act requests to several agencies, including the Bureau of Alcohol, Tobacco and Firearms (ATF) and the Tax Division of the Department of Justice (Tax). These requests sought records related to the criminal case that led to his incarceration. *See* Compl. [Dkt. 1] ¶ 11. Dissatisfied with the response received from the agencies, Mr. Sarno has sued to enforce his FOIA rights.

The agencies have moved for summary judgment. For the reasons stated below, the Court will grant Tax's Motion for Summary Judgment and deny ATF's motion.

## I. BACKGROUND FACTS

Michael John Sarno is incarcerated at the Federal Corrections Center in Petersburg, Virginia. After a jury trial, he was convicted of conspiracy to violate the Racketeering and Corrupt Organizations Act (RICO), 18 U.S.C. §1962(d) (2012), and conducting an illegal gambling business, in violation of 18 U.S.C. § 1955. He was sentenced on

1

March 15, 2012 to 240 months' incarceration on the RICO conviction and sixty months, to run

consecutively, on the illegal gambling conviction.  On September 23, 2014, Mr. Sarno submitted

FOIA requests to both ATF and Tax, seeking documents related to his criminal case.  Compl. ¶¶

11, 13, 21.

### A. Mr. Sarno's FOIA Request to ATF

ATF is a federal bureau that operates within the United States Department of

Justice.  ATF received Mr. Sarno's FOIA request on October 7, 2014.  ATF's Partial Statement

of Material Facts Not in Genuine Dispute (ATF SOF) [Dkt. 11-1] ¶ 1.  Receiving no response,

Mr. Sarno requested status updates from ATF on November 19, 2014 and January 29, 2015.

Compl. ¶¶ 14-15.  On March 27, 2015, having received no response from ATF to any of his

inquiries, Mr. Sarno appealed the constructive denial of his FOIA request to the Department of

Justice's Office of Information Policy (OIP).[1]  ATF SOF ¶ 2.  ATF thereafter acknowledged

receipt of Mr. Sarno's FOIA request on June 9, 2015.[2]

Because Mr. Sarno's criminal case was brought in the Northern District of

Illinois, ATF's Disclosure Division, which handles FOIA requests, determined that its Chicago

Field Office would likely possess any records responsive to Mr. Sarno's request.  ATF MSJ Ex.

2, Decl. of Stephanie M. Boucher (Boucher Decl.) [Dkt. 11-2] ¶ 8.  The Disclosure Division

submitted a search request to the Chicago Field Office on June 10, 2015, and the Chicago Field

---

[1] Because ATF had made no adverse determination in regards to Mr. Sarno's FOIA request at
this point, OIP concluded that there was no action for it to consider on appeal.  ATF SOF ¶ 4.
OIP informed Mr. Sarno of this determination by letter dated September 4, 2015.  *Id*.

[2] A considerable period of time passed between Mr. Sarno's FOIA request and ATF's response,
far longer than the 20 days provided for a response by statute.  5 U.S.C. § 552(a)(6).  All agency
actions may be relevant in assessing that agency's response to a FOIA request, although "initial
delays in responding to a FOIA request are rarely, if ever, grounds for discrediting later
affidavits by the agency."  *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir.
2003).  ATF's delay in response, although unfortunate, does not rise to the level of bad faith.

Office responded six weeks later on July 28, 2015 that it had reviewed Mr. Sarno's case file. It provided a categorical description of the documents the file contained. *Id.* ¶ 9-10.

In May 2016, the Disclosure Division conducted a search in both the "N-FORCE" and Treasury Enforcement Communications System (TECS) databases to ascertain whether additional responsive records existed. *Id.* ¶ 12. N-FORCE is ATF's official case file database, which allows users to run queries on a number of identifying characteristics associated with a particular individual, including name, date of birth, or properties or vehicles associated with that person. *Id.* ¶ 14. Similarly, TECS is an inter-departmental database maintained by the Bureau of Customs and Border Protection "designed to identify individuals and businesses suspected of or involved in violation of Federal law." *Id.* ¶ 15. The Disclosure Division queried both databases using the personally-identifying information of Mr. Sarno, including his name, Social Security number, and date of birth. *Id.* ¶ 17. The search of TECS produced no results, and the search of N-FORCE identified only the case file already identified by the Chicago Field Office. *Id.* ¶ 18.

After concluding its search, ATF identified the following collections of documents: (1) approximately 21 bankers boxes of material; (2) a file cabinet drawer; (3) a 500 GB hard drive; (4) fourteen containers filled with computer discs; and (5) physical evidence not subject to FOIA, such as firearms and chemicals. *Id.* ¶ 19. This resulted in the collection of between 32,575-43,370 paper documents, as well as the contents of the 500 GB hard drive, 207 to 257 computer discs, 12 cassette tapes, and 2 VHS tapes. *Id.* ¶ 34. In reviewing the documents, ATF identified eight separate categories into which each document fell. They are: (1) grand jury material; (2) tax return information; (3) firearms trace reports; (4) wiretap, pen register, and GPS tracking information; (5) pole camera and consensual recording information;

(6) reports of investigations, operational plans, and supporting investigative materials; (7) search warrants; and (8) documents originating with the United States Attorney's Office. *Id.* ¶¶ 34-42.

Ultimately, ATF concluded that all responsive documents were exempt from disclosure, and released none to Mr. Sarno. *Id.* ¶ 20. ATF further concluded that no part of any of the 32,575-43,370 documents, nor any document found on any electronic media, could be reasonably segregated from exempt information. *Id.* ¶ 93.

Receiving no further contact from ATF after its June 2015 acknowledgment of his request, Mr. Sarno filed the immediate lawsuit on April 8, 2016. On May 16, 2016, ATF informed Mr. Sarno that it had determined that all records responsive to Mr. Sarno's request were subject to withholding and therefore would not produce any documents to him. *Id.* ¶ 5.

**B. Mr. Sarno's FOIA Request to Tax**

Mr. Sarno sent Tax a substantively similar FOIA request on September 23, 2014. Compl. ¶ 13. Tax received this request on October 6, 2014, and ran its initial searches that day. Tax MSJ Ex. 1, Decl. of Carmen M. Banerjee (Banerjee Decl.) [Dkt. 19-1] ¶¶ 8, 17. Tax also sent Mr. Sarno an initial response shortly thereafter, on October 22, 2014. *Id.* ¶ 10.

Tax performed its initial search using its TaxDoc database for civil or criminal matters associated with Mr. Sarno's personally-identifying information, including his name and Social Security number. *Id.* ¶ 18. This search yielded one paper criminal file that contained records pertaining to Mr. Sarno. *Id.* ¶ 19. Having found this paper file, Tax also searched its electronic Document Management System for any records associated with that file. *Id.* ¶ 23. This search yielded no records. *Id.* ¶ 24.

After Mr. Sarno filed this lawsuit, Tax again searched its electronic Document Management System using somewhat broader search terms. *See id.* ¶ 30. It also searched

records of its Outlook Exchange entries to identify any electronic calendar items that may have been associated with Mr. Sarno. *Id.* ¶ 32. These additional searches returned no additional unique responsive documents. *Id.* ¶¶ 31, 33.

In total, Tax identified 29 pages of responsive documents. Tax found that ten of these pages originated within Tax itself; of those ten, it withheld five in part, withheld three in total, and wholly released two to Mr. Sarno. *Id.* ¶ 35. Tax referred six of the pages to the Internal Revenue Service, which withheld all six pages as exempt. *Id.* ¶¶ 39, 41. Tax also referred eight pages to the Executive Office of U.S. Attorneys (EOUSA). *Id.* ¶42. EOUSA withheld six of those pages as exempt, and referred the two remaining pages to the IRS; the IRS partially released one of the pages to Mr. Sarno. *Id.* ¶ 45; 53. Finally, Tax referred five pages to the FBI, which withheld all five. *Id.* ¶ 56.

## II. VENUE AND JURISDICTION

Section 552(a)(4)(B) of the U.S. Code grants this Court subject matter jurisdiction over all actions brought under FOIA, and makes this an appropriate forum for venue purposes. 5 U.S.C. § 552(a)(4)(B) ("On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."); *see Jones v. Nuclear Regulatory Comm'n*, 654 F. Supp. 130, 131 (D.D.C. 1987).

The Court's jurisdiction under FOIA extends only to claims arising from the improper withholding of agency records. *See* 5 U.S.C. § 552(a)(4)(B); *see also Lazaridis v. U.S.*

*Dep't of Justice*, 713 F. Supp. 2d 64, 66 (D.D.C. 2010) (citing *McGehee v. CIA*, 697 F.2d 1095, 1105 (D.C. Cir. 1983)).

## III. LEGAL STANDARDS

### A. Summary Judgment

FOIA cases are typically and appropriately decided on summary judgment. *See Sanders v. Obama*, 729 F. Supp. 2d 148, 154 (D.D.C. 2010). Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The party moving for summary judgment "bears the initial responsibility . . . [to] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, a court must draw all justifiable inferences in favor of the nonmoving party and accept the nonmoving party's evidence as true. *See Anderson*, 477 U.S. at 255. The nonmoving party, however, must provide more than a "mere existence of a scintilla of evidence . . . . [T]here must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252.

### B. FOIA

FOIA "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003). Under FOIA, federal agencies must release records to the public upon request, unless one—or more—of nine statutory exemptions applies. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975); 5

U.S.C. § 552(b). To prevail in a FOIA case, a plaintiff must show that an agency has improperly withheld agency records. *See Odland v. FERC*, 34 F. Supp. 3d 1, 13 (D.D.C. 2014). The defending agency must demonstrate that its search for responsive records was adequate, that any invoked exemptions actually apply, and that any reasonably segregable non-exempt information has been disclosed after redaction of exempt information. *See id*.

Because Mr. Sarno's FOIA requests involve multiple government agencies, all of which assert varied FOIA exemptions, a brief introduction to the relevant exemptions is appropriate.

Exemption 3, 5 U.S.C. § 552(b)(3), allows agencies to withhold information that is already prohibited from disclosure by another statute. "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." *Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978). Examples of statutes that prohibit disclosure of information, and thus trigger Exemption 3, include Federal Rule of Criminal Procedure 6(e), which prohibits disclosure of grand jury material; 26 U.S.C. § 6103(a), which prohibits disclosure of third-party tax return information; and Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510-22, which prohibits disclosure of court-ordered wiretap information. *See Fund for Constitutional Gov't v. NARA*, 656 F.2d 856, 867 (D.C. Cir. 1981) (exempting grand jury information under Exemption 3); *Chamberlain v. Kurtz*, 444 U.S. 842 (1979) (exempting tax return information); *Miller v. U.S. Dep't of Justice*, 562 F. Supp. 2d 82, 111 (D.D.C. 2008) (exempting wiretap information).

Exemption 5, 5 U.S.C. § 552(b)(5), exempts information "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an

agency in litigation with the agency."  Exemption 5 essentially protects from disclosure any

information that would typically be covered by the attorney-client or work product privileges.

*See United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799 ("Exemption 5 simply incorporates

civil discovery privileges.").

Exemption 6 of FOIA protects personnel, medical, or similar information, the

disclosure of which "would constitute a clearly unwarranted invasion of personal privacy."  5

U.S.C. § 552(b)(6).  Exemption 7(C) provides similar protection for personal information

collected for law enforcement purposes, permitting agencies to withhold such records when its

disclosure "could reasonably be expected to constitute an unwarranted invasion of privacy."  5

U.S.C. § 552(b)(7)(C); *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C.

Cir. 2011) (stating that Exemption (7)(C) "establishes a lower bar for withholding material" than

Exemption 6).  To determine whether information falls under either of these exemptions, a court

must first identify both the privacy interests at stake and the public interest in disclosure, and

then balance these interests against each other.  *See Citizens For Responsibility and Ethics In*

*Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1091 (D.C. Cir. 2014).

Exemption 7(A) allows agencies to withhold records which "could reasonably be

expected to interfere with law enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  Exemption

7(A) is intended to "prevent disclosures which might prematurely reveal the government's cases

in courts, its evidence and strategies, or the nature, scope, and focus of investigations."  *Maydak*

*v. U.S. Dep't of Justice*, 218 F.3d 760, 762 (D.C. Cir. 2000).  An agency asserting Exemption

7(A) must show that disclosure could reasonably be expected to cause harm to a pending law

enforcement proceeding.  *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978);

*see also Campbell v. HHS*, 682 F.2d 256, 259 (D.C. Cir. 1982).

Exemption 7(D) permits agencies to withhold documents "compiled by criminal law enforcement authorit[ies] in the course of a criminal investigation" if producing the records "could reasonably be expected to disclose the identity of a confidential source" or information furnished by that source. 5 U.S.C. § 552(b)(7)(D). "Exemption 7(D) has long been recognized as affording the most comprehensive protection of all FOIA's law enforcement exemptions." *Billington v. U.S. Dep't of Justice*, 301 F. Supp. 2d 15, 21 (D.D.C. 2004). Exemption 7(D) applies to all information that would tend to reveal a source's identity, and includes all information received from a confidential source during the course of a legitimate criminal investigation. *See Parker v. U.S. Dep't of Justice*, 934 F.2d 375, 380 (D.C. Cir. 1991). "[T]he question is . . . whether the particular source spoke with an understanding that the communication would remain confidential." *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993).

Exemption 7(E) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "[E]xemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).

Exemption 7(F) allows agencies to withhold information concerning "any individual" when disclosure of such information "could reasonably be expected to endanger [his] life or physical safety." 5 U.S.C. § 552(b)(7)(F). "While courts generally have applied

Exemption 7(F) to protect law enforcement personnel or other specified third parties, by its terms, the exemption is not so limited; it may be invoked to protect 'any individual' reasonably at risk of harm." *Amuso v. U.S. Dep't of Justice*, 600 F. Supp. 2d 78, 101 (D.D.C. 2009). "In reviewing matters under Exemption 7(F), courts may inquire whether there is some nexus between disclosure and possible harm." *Id.*

These provisions, taken together, create a latticework that exempts from disclosure almost all information associated with a criminal case. Despite this, agencies are still obligated to meet their FOIA obligations and to provide the court with sufficient information to assess the validity of exemptions claimed.

## IV. ANALYSIS

### A. ATF

#### 1. Adequacy of the Search

The adequacy of an agency search is measured by its reasonableness, which depends on the individual circumstances of each case. *See Sanders*, 729 F. Supp. 2d at 154; *see also Truitt v. U.S. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). Under FOIA, any "requester dissatisfied with the agency's response . . . may challenge the adequacy of the agency's search by filing a lawsuit in the district court after exhausting any administrative remedies." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999); *see also* 5 U.S.C. § 552(a)(4)(B). The defending agency then bears the burden of demonstrating "beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995).

An agency may show its search was reasonable, such that summary judgment in its favor is warranted, through an affidavit by a responsible agency official, "so long as the

declaration is reasonably detailed and not controverted by contrary evidence or evidence of bad faith." *Sanders*, 729 F. Supp. 2d at 155. Accordingly, affidavits that include "'search methods, locations of specific files searched, descriptions of searches of all files likely to contain responsive documents, and names of agency personnel conducting the search are considered sufficient.'" *Citizens for Responsibility & Ethics v. Nat'l Archives & Records Admin.*, 583 F. Supp. 2d 146, 167 (D.D.C. 2008) (quoting *Ferranti v. BATF*, 177 F. Supp. 2d 41, 47 (D.D.C. 2001)).

ATF contends that its search was adequate because its Disclosure Division requested a search of its Chicago Field Office for Mr. Sarno's casefile, which the Office located. Boucher Decl. ¶ 8. ATF also searched both its internal database N-FORCE as well as the inter-agency database TECS using Mr. Sarno's personally-identifying information to confirm that no additional records existed. *Id.* ¶ 18. Mr. Sarno does not contest the adequacy of ATF's search, and the Court has no evidence that ATF's search was otherwise inadequate. Because the search of the Chicago Field Office, with the confirmatory searches of the two databases, was reasonably tailored to find all responsive documents, the Court concludes that ATF's search was adequate.

## 2. Exemptions Claimed By ATF

Typically, agencies provide to courts an itemized description of all withheld and redacted documents, with a brief description of the document, the exemptions claimed, and the bases for the claimed exemptions. This index, known as a *Vaughn* Index, allows courts to adequately assess the validity of an agency's withholdings. *See Vaughn v. Rosen*, 484 F. 2d 820, 827 (D.C. Cir. 1973). A *Vaughn* Index is not always required, however, such as when a categorical description of the documents suffices to give a court the information necessary to assess an agency's claims. In particular, courts allow agencies broadly asserting Exemption 7(A)

over an entire criminal file to "satisfy its burden of proof under Exemption 7(A) by grouping

documents in categories and offering generic reasons for withholding the documents in each

category." *Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 765 (D.C. Cir. 2000). Categorical

descriptions in lieu of a *Vaughn* Index may be appropriate when an agency asserts other

exemptions as well. *See id.* at 766 (collecting cases).

ATF, which relies predominantly on Exemption 7(A) in withholding all

responsive documents, has not submitted a *Vaughn* Index, and instead identifies eight functional

categories of documents: (1) Grand Jury Material; (2) Tax Return Information; (3) TRACE

Information; (4) Wiretap, Pen Register, and GPS Tracking Information; (5) Pole Camera and

Consensual Recording Information; (6) Reports of Investigations, Operational Plans, and

Supporting Investigative Materials; (7) Search Warrants; and (8) Documents Originating with

the United States Attorney's Office. Boucher Decl. ¶¶ 34-42. ATF asserts that all this material

is subject to withholding under Exemption 7(A), and additionally asserts several other

exemptions for each of the separate categories.

### a. Exemption 7(A)

As stated above, Exemption 7(A) permits agencies to withhold records which

"could reasonably be expected to interfere with law enforcement proceedings." 5 U.S.C.

§ 552(b)(7)(A). ATF must show disclosure of its records on Mr. Sarno's criminal case could

reasonably be expected to cause harm to a pending law enforcement proceeding. *Robbins Tire &*

*Rubber Co.*, 437 U.S. at 224. ATF relies solely on pending § 2255 habeas proceedings brought

by Mr. Sarno and certain co-defendants. *See* Boucher Decl. ¶ 33 ("The pending habeas actions

are the basis for the application of Exemption 7(A)."). ATF asserts that disclosing any

responsive documents would "compromise the Government's ability to defend its position in

Plaintiff's ongoing 2255 proceeding, [and] also compromise the Government's ability to effectively defend its position in the other co-defendants' habeas proceedings." *Id.* ¶ 44.

Exemption 7(A) exists because Congress "recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it came time to present their cases" in court. *Robbins Tire & Rubber Co.*, 437 U.S. at 224. Still, Exemption 7(A) is not intended to "endlessly protect material simply because it was in an investigatory file." *Id.* at 230. Exemption 7(A) was enacted by Congress as part of a package of amendments to FOIA explicitly intended to provide public access to closed case files, and to overrule certain D.C. Circuit decisions that Congress was concerned would allow agencies to use Exemption 7 to endlessly protect cold casefiles from public disclosure. *See id.* at 226-34 (discussing legislative history of Exemption 7(A)). While very little caselaw discusses at what point an investigation can be said to be no longer pending, "[u]sually the 'purpose and point' of an investigation expires when its goal, the holding of an adjudicatory proceeding, is reached. Hence, an enforcement proceeding can generally be equated with a trial." *Moorefield v. U.S. Secret Serv.*, 611 F.2d 1021, 1025 (5th Cir. 1980).

ATF cites no case, and the Court can identify no controlling precedent, in which Exemption 7(A) was held to be applicable solely on the basis of an ongoing habeas proceeding. The only time the D.C. Circuit certified the question of whether a habeas proceeding qualified as a pending action for the purposes of Exemption 7(A), the government voluntarily withdrew its argument asserting that it did so before the Circuit ruled on the question, for what appears to be some concerns as to that argument's validity. *Maydak*, 218 F.3d at 764. That decision, while not precedential, illustrates the complexity of the issue.

Habeas petitions are civil proceedings brought under, *inter alia*, 28 U.S.C. § 2255 or § 2241, which allow an individual to challenge his detention on the grounds that it occurs in violation of his constitutional rights. Habeas proceedings are brought at the election of a prisoner, not the government. Prisoners are not automatically granted counsel in a habeas proceeding as they are in a criminal proceeding. While habeas proceedings may be brought by criminal defendants, not all habeas petitions involve criminal defendants or inmates; however, habeas under § 2255 is specifically reserved for "a prisoner in custody under sentence of a court."

However, a § 2255 habeas proceeding constitutes a collateral attack by a prisoner on a fully concluded criminal proceeding, which complicates the typical Exemption 7(A) concerns for two reasons. First, it occurs at the prisoner's election, and may be brought a considerable time after the conclusion of the criminal proceedings. The law enforcement proceeding is "pending" only because the prisoner is attacking the basis for his conviction; the law enforcement investigation has otherwise concluded and would be dormant—and therefore not exempt under 7(A). In other words, the pendency of the proceeding is not dependent on the activities of law enforcement agencies, in contrast to a criminal trial and appeal. Because a habeas proceeding could be brought a considerable time after an investigation has concluded, the specter of a potential later-filed habeas petition could lead agencies to seek to exempt otherwise dormant casefiles under Exemption 7(A).

Further, with the conclusion of a trial and appeal, the agencies have already had their opportunity to—successfully—present their case in court without interference. The fruit of the efforts protected by Exemption 7(A) have already been presented to the public in court. The other "latticework" exemptions protecting confidential information and law enforcement

14

strategies would remain in place, and material that falls under them would continue to be exempted from disclosure under FOIA. In a post-conviction habeas proceeding, therefore, it is not necessarily clear what non-public information Exemption 7(A) would be protecting that would not already be subject to withholding under another exemption. "Under our public-domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999)

In this case, Mr. Sarno's § 2255 challenge to his conviction is an ongoing proceeding in which prosecutors must defend their prosecution and his convictions. Whatever the problem with applying Exemption 7(A) to a criminal case file in anticipation of a future § 2255 habeas action, these problems are not presented here. There is no doubt that ATF's casefile on Mr. Sarno's criminal proceeding was compiled for "law enforcement purposes," and, should his § 2255 motion succeed, a new trial would be a reasonable likelihood. *See King v. U.S. Dep't of Justice*, 08-cv-1555, 2009 WL 2951124 at *6 (D.D.C. 2009); *Johnson v. FBI*, 118 F. Supp. 3d 784. 793-95 (E.D. Pa. 2015).

Mr. Sarno is not left without any recourse, despite Exemption 7(A). In addition to the already-referenced public domain rule, Mr. Sarno also has rights to discovery from the government's files through special rules of procedure covering § 2254 and § 2255 habeas proceedings. Fed. R. Governing § 2254 and 2255 Cases 6. Rule 6 specifically provides for discovery with leave of court for good cause. *Id*. Interrogatories, requests for admission, document requests and depositions may be ordered. *Id.* Mr. Sarno's ongoing § 2255 proceeding will therefore not be unduly hindered by ATF's assertion of Exemption 7(A) over his file.

Given this, the Court finds that ATF's assertion of Exemption 7(A) is appropriate under the circumstances.

### b. Other Exemptions Claimed

In addition to asserting Exemption 7(A) as a blanket exemption over all responsive records in its possession, ATF asserts various exemptions for each of the identified categories of records. ATF asserts Exemption 3 for: (1) Grand Jury Material, on the grounds that it is protected from disclosure by Fed. R. Crim. P. 6(e), *see* Boucher Decl. ¶ 48; (2) Tax Return records, on the grounds that they are protected by 26 U.S.C. § 6103, *see id.* ¶ 51; (3) Wiretap records, on the grounds that they are protected by Title III of the Omnibus Crime Control and Safe Streets Act, *see id.* ¶ 60; (4) Pen register records, on the grounds that they are protected by 18 U.S.C. § 3123(d), governing disclosure of pen registers, *see id.* ¶ 61; (5) TRACE data, on the grounds that it is protected by the Gun Control Act, *see id.* ¶ 62. ATF asserts Exemptions 6 and 7(C) for (1) Grand Jury Material; (2) Tax Return records; (3) Wire Tap, Pen Register, and GPS Tracking records; (4) Pole Camera and Consensual Wiring records; (5) Reports of Investigation; (6) Search Warrants; and (7) records originating with the US Attorney's Office. *Id.* ¶ 70. It asserts Exemption (7)(D) for (1) Grand Jury Material; (2) Tax Return records; (3) Wire Tap, Pen Register, and GPS Tracking records; (4) Pole Camera and Consensual Wiring records; (5) Reports of Investigation; (6) Search Warrants; and (7) records originating with the US Attorney's Office. *Id.* ¶ 79. ATF asserts Exemption 7(E) for (1) Reports of Investigation; (2) Operational Plans; and (3) Pole Camera and Consensual Recording Operations. *Id.* ¶ 85. Finally, ATF asserts Exemption 7(F) for (1) Grand Jury Material; (2) Tax Return records; (3) Wire Tap, Pen Register, and GPS Tracking records; (4) Pole Camera and Consensual Wiring records; (5) Reports of Investigation; (6) records originating with the U.S.

Attorney's Office; and (7) sealed documents (the latter of which is not one of the ATF's enumerated document categories). *Id.* ¶ 90.

At this stage, the Court is not in a position to assess the validity of ATF's claimed exemptions. While it is at times appropriate for an agency to rely on enumerated categories in lieu of a *Vaughn* Index, *see Maydak*, 218 F.3d at 765, the categorization must allow the Court to assess the adequacy of those asserted exemptions. It is clear from ATF's affidavits that it does not intend for each claimed exemption to apply universally to all records in each proposed category. For example, ATF claims that the category Wiretaps, Pen Registers, and GPS Tracking records are exempt under Exemption 3 under both Title III of the Omnibus Crime Control and Safe Streets Act, covering wiretaps, and 18 U.S.C. § 3123(d), covering pen registers. Both are likely valid exemptions, but neither can encompass the entire category of records identified by ATF. The Court needs more information about how ATF has applied each of these additional exemptions. *See Dugan*, 82 F. Supp. 3d at 501; *Fowlkes v. ATF*, 67 F. Supp. 3d 290, 306 (D.D.C. 2014) ("Here, the declarant's explanation merely mirrors the language of the exemption. Missing is any description . . . or any statement from which the Court could conclude that disclosure of the information might reveal a law enforcement technique or procedure. The ATF thus fails to justify its decision to withhold information . . . .").

### 3. Segregability

ATF asserts that "[t]he ATF Senior Special Agent from the Chicago Field Division reviewed the materials responsive to Plaintiff's FOIA request and determined that no documents could be reasonably segregated from exempt information and produced to Plaintiff pursuant to Exemption 7(A)." Boucher Decl. ¶ 93. Thus, ATF determined that no part of any of the more than 30,000 responsive records in its possession was segregable from exempt

information.  While ATF asserts in its briefs that such segregability analysis was done for all

claimed exemptions, *see* ATF Mot. at 38, its Declarations only make reference to Exemption

7(A).  Boucher Decl. ¶ 93.  Several categories of records also seem to facially include documents

likely to be in the public domain, including, *inter alia*, "exhibits" that originated with the U.S.

Attorney's office.

Typically a categorical list is appropriate under Exemption 7(A) in lieu of specific

document descriptions.  Here, however, the harm articulated by ATF is predicated on the

assumption that the materials are not already in the public domain.  Rather than speculate about

the materials in the investigative file or the extent to which they were entered into the public

record at Mr. Sarno's trial, the Court will order ATF to supplement its filings and address, with

more particularity:  (1) the specific materials and information in the investigative file; (2)

whether or not specific materials or information became matters of public record at Mr. Sarno's

trial; and (3) the connection between the specific materials and information in the investigative

file and the specific exemptions, beyond Exemption 7(A), upon which ATF is relying.  *See*

*Johnson*, 118 F. Supp. 3d at 796.  ATF may do so, to the extent possible, through more detailed

affidavits in lieu of a full *Vaughn* Index.

### B. Tax

#### 1. Adequacy of the Search

In response to Mr. Sarno's request, Tax performed a multi-pronged search using

Mr. Sarno's personally-identifying information in order to identify responsive documents.  Tax

searched its primary case management system, TaxDoc, to search for any criminal or civil case

associated with Mr. Sarno's personally-identifying information.  Banerjee Decl. ¶¶ 16-21.  It also

searched its internal electronic document storage system, the Document Management System.

*Id.* ¶ 22-24.  After this litigation began, Tax again searched its Document Management System, using a broader set of search terms, as well as its Outlook Express internal calendar records.  *Id.* ¶¶ 30-33.

As with ATF, Mr. Sarno also does not contest the adequacy of Tax's search.  Tax's initial search of its TaxDoc system identified one paper file, and its subsequent several searches produced no additional nonduplicative documents.  Given the evidence presented by Tax, the Court concludes that its search was adequate.

## 2. Exemptions Claimed by Tax

Tax's search produced a total of 29 pages of responsive records.  Of these, Tax determined that 19 pages should be referred out to originating agencies for independent assessment.  Tax determined that the remaining ten pages had been produced internally by Tax.  Of those ten, Tax wholly withheld three pages, partially released five with redactions, and wholly released two.  Banerjee Decl. ¶ 11.  Tax describes in detail the nature and substance of each of the eight pages withheld in whole or in part.  *See Id*. ¶¶ 36-38.  The five pages partially withheld were based on Exemptions 3, 5, 6, and 7(C), and the three pages withheld entirely were based on Exemption  5.  *Id.* ¶ 35.

Mr. Sarno does not contest the grounds upon which Tax withheld its own internal records; he limits his protestations to the conduct of the agencies to whom Tax referred records.  *See* Pl.'s Tax Opp'n at 5 ("Although the Banerjee Declaration reasonably describes and justifies the nondisclosure of the pages that Tax reviewed, it provides no such information with respect to the 19 pages it referred to the IRS, EOUSA, or FBI.").  Because Mr. Sarno does not dispute the reasonableness of Tax's own withholdings, and because the Court's own review of Tax's submitted materials leads it to the conclusion that its withholdings were reasonable, the Court

19

concludes, without extended discussion, that Tax met its burden with regards to its own internal review.

In his opposition brief, Mr. Sarno protests that all agencies to whom Tax referred records—the IRS, EOUSA, and the FBI—failed to "(1) sufficiently describe the document and the justifications for nondisclosure with reasonably specific detail; and (2) properly justify the reasoning for withholding documents under the FOIA exemptions asserted, and disclosed 'reasonably segregable' non-exempt information." Pl.'s Tax Opp'n ¶ 20. In reply, Tax has supplemented its submissions with additional affidavits from all referral agencies, and has itself provided general descriptions of the documents. *See* Tax Reply Exs. 1-4 [Dkt. 32]; *see generally* Tax Reply.[3]

### a. FBI

Tax referred five pages of records to the FBI. Tax Reply ¶ 26. FBI determined that these five pages were actually two IRS documents, one of which contained FBI equities.[4] Tax Reply Ex. 5, Suppl. Banerjee Decl. [Dkt. 32-5] ¶ 9. The only FBI material information in this document relates to a court-ordered wiretap. Hardy Decl. ¶¶ 11-12. Court-ordered wiretaps—and information obtained from them—are obtained pursuant to Title III of the Omnibus Crime Control and Safe Streets Act, and are exempt from disclosure under Exemption 3. *See Miller v. U.S. Dep't of Justice*, 562 F. Supp. 2d 82, 111 (D.D.C. 2008) ("[I]nformation pertaining to wiretaps may be withheld under Exemption 3."). Accordingly, the FBI asserts that Exemption 3 justifies withholding this information. Hardy Decl. ¶¶ 11-12. As this wiretap

---

[3] Due to a computer issue, Tax's Reply Exhibit 4, FBI Hardy Decl. [Dkt. 32-1] is available on the docket at Dkt. 33-1.

[4] FBI initially withheld all five pages itself, but on March 29, 2017, the FBI informed Tax that the document was actually an IRS document. Suppl. Banerjee Decl. ¶ 9.

information is appropriately withheld under Exemption 3, FBI, and by extention Tax, has adequately justified its withholding in this circumstance.[5]

### b. EOUSA

Tax referred eight pages of records to EOUSA. EOUSA initially determined that two pages were IRS records, and so referred those two pages to the IRS. Tax Reply ¶ 11. The IRS, after withholding some third-party tax information, referred the two pages back to EOUSA for further review. *Id.* ¶ 8. EOUSA ultimately determined that all eight pages were fully exempt from disclosure under Exemption 3 because they constituted grand jury material. *See* Tax Reply Ex. 2, IRS Boseker Decl. [Dkt. 32-2] ¶ 21. Grand jury material is properly withheld under Exemption 3 under Federal Rule of Criminal Procedure 6(e), which regulates disclosure of grand jury material. Fed. R. Crim. P. 6(e). "[T]he disclosure of matters occurring before the grand jury is the exception and not the rule." *Fund for Constitutional Gov't v. NARA*, 656 F.2d 856, 867 (D.C. Cir. 1981). This presumption of nondisclosure encompasses "not only the direct revelation of grand jury transcripts but also the disclosure of information which would reveal 'the identities of witnesses or jurors, the substance of the testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Id*. at 869. The documents withheld, all of which concern grand jury proceedings and materials, including the impressions of and preparations for grand jury proceedings by government attorneys, *see* Boseker Decl. ¶ 21; Tax Reply at 7-11, are appropriately withheld under Exemption 3.[6]

---

[5] FBI also asserts that the information is appropriately withheld under Exemptions 7(A) and 7(E). As the Court has already determined that the information is appropriately withheld under Exemption 3, it will not undertake a further analysis of the other possible exemptions. *See Utahamerican Energy, Inc. v. Dep't of Labor*, 685 F.3d 1118, 1123 (D.C. Cir. 2012) (explaining that the government need only prevail on one exemption).
[6] EOUSA also asserted Exemptions 5 and Exemptions 7(C) concerning which the Court does not undertake further analysis. *See Utahamerican Energy, Inc.*, 685 F.3d at 1123.

### c. IRS

Finally, IRS reviewed 13 pages: (1) six pages referred to it by Tax directly, comprising a six-page Grand Jury Memorandum; (2) five pages initially referred by Tax to the FBI, which the FBI determined were actually IRS pages with FBI information and which consisted of a three-page Grand Jury Access List, and a two-page Fact Sheet; and (3) two pages from EOUSA, which ultimately withheld those pages itself. Of the 11 pages on which the IRS made final determinations, the Grand Jury Memorandum, the Grand Jury Access List, and the Fact Sheet[7] were withheld in their entirety. *See* Tax Reply Ex. 1, Minauro Decl. [Dkt. 32-1] ¶ 4; Tax Reply Ex. 3, Zehme Decl. [Decl. 32-3] ¶ 7.

The IRS withheld all three documents under Exemption 3. For the Grand Jury Memorandum and the Grand Jury Access List, the IRS asserted that the entire contents were exempt from disclosure by virtue of the fact that, as their titles imply, they constitute grand jury materials. *See* Minauro Decl. ¶ 4, 10; Zehme Decl. ¶ 11. This is appropriate grounds for exemption. The IRS withheld the Fact Sheet under Exemption 3 on two grounds. First, third-party tax return information was withheld on the grounds that it is exempt under the Internal Revenue Code § 6103(a), which prohibits disclosure of such information. Courts have ruled that § 6103(a) is an exempting statute for the purposes of Exemption 3, and, therefore, tax return information is exempt from disclosure under FOIA. *See Sea Shepherd Conservation Soc. v. IRS*, 89 F. Supp. 3d 81, 98 (D.C. Cir. 2015). Second, information related to a court-ordered wiretap was withheld under Title III of the Omnibus Crime Control and Safe Streets Act; the FBI independently asserted the same exemption, as already detailed by the Court. This is an

---

[7] While the IRS did assess the two pages referred to it from EOUSA, the Court has already held that those two pages were appropriately withheld by EOUSA in their entirety, and so does not revisit IRS's own determinations.

appropriate grounds for withholding under FOIA Exemption 3. The IRS has, therefore, adequately shown that its withholdings under FOIA Exemption 3 were appropriate.[8]

### 3. Segregability

As stated above, Tax bears the burden of demonstrating that all reasonably segregable portions of a record have been disclosed, and may do so by "offering an affidavit with reasonably detailed descriptions of the withheld portions of the documents and alleging facts sufficient to establish an exemption." *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008). The combined affidavits of both Tax and the referral agencies describe each record, including records partially or wholly withheld, in considerable detail, which has allowed the Court to assess the steps taken to determine segregability. The records withheld by the referral agencies have been discussed in detail above. For the eight pages withheld in part or in full by Tax itself, it addresses the segregability of each document in turn. *See* Banerjee Decl. ¶¶ 36(A)(ii); 36(B)(iv); 36(C)(iv)(c); 37. In each case, the withheld information is either (1) third-party information properly withheld under Exemptions 6 and 7(C); (2) tax information withheld under Exemption 3; or in one case (3) a letter written by a Tax Division attorney withheld under Exemption 5. The detailed descriptions of the withholdings demonstrate that no further reasonably segregable, nonexempt information could be released.

### V. CONCLUSION

For the foregoing reasons, the Court will deny ATF's Motion for Summary Judgment [Dkt. 11] and order ATF to supplement its description of the records withheld in order to more fully explain whether any documents otherwise exempt on Exemption 7(A) have entered

---

[8] Like the other agencies, the IRS asserts alternate exemptions, namely Exemption 5, Exemption 6 and Exemption 7(C). The Court does not analyze these additional exemptions.

the public domain.  The Court will grant Tax's Motion for Summary Judgment [Dk. 19], and

judgment will be entered in Tax's favor.

A memorializing Order accompanies this Memorandum Opinion.

Date: September 29, 2017                                    _____/s/_____
                                                           ROSEMARY M. COLLYER
                                                           United States District Judge